Clyde A. FERGUSON et al *v.*
James GREEN et al

79-80                                                  587 S.W. 2d 18

Opinion delivered October 1, 1979
(In Banc)

*John T. Harmon,* for appellants.

*Wilson, Dougherty & Mills, P.A.,* for appellees.

JOHN A. FOGLEMAN, Justice. This is the second appeal in this case. The case originated as an action by F & M Investments, Inc. against James Green and Cole Morgan to recover rentals alleged to have been due it under a lease-purchase agreement. Appellees here filed a cross-complaint in which they alleged that they had exercised their option to purchase the real estate which was the subject of the lease-purchase agreement, but that the original lessors, Clyde A. Ferguson, Sharon C. Ferguson, Charles D. Matthews and Susan S. Matthews, who are appellants here, had failed and refused to convey the property to appellees here. They sought specific performance. The Greens and the Morgans raised the same issues in an action by Twin City Bank for foreclosure of a mortgage, but other issues in the foreclosure suit are not material here. That action was consolidated with the suit by F & M Investments, Inc. In the consolidated proceeding the chancery court dismissed the counterclaims of the Greens and the Morgans on the ground that they had failed to assume the mortgage in favor of Twin City Bank. We disagreed with the chancery court and held that the clause in the contract requiring the Greens and Morgans to assume that mortgage did not require that they also obtain a release of appellants here from that obligation, before the option to purchase the property could be exercised. *Green* v. *Ferguson,* 263 Ark. 601, 567 S.W.2d 89. Even so, the dispostion of the case on appeal on trial de novo on the record did not permit

this court to direct a decree for specific performance by the appellees there (appellants here). In that trial, Clyde A. (Tony) Ferguson had testified that he and Matthews had conveyed the property to Freddie Hudson, a brother-in-law of Ferguson. He testified that no cash had been paid by Hudson to him and Matthews, but that Hudson had a letter of commitment from Arkansas Savings & Loan Association to finance his purchase for $165,000, and that there was no necessity for any money to change hands because he (Ferguson) had a letter of credit. Ferguson said that the deed to Hudson had been executed by Matthews and Ferguson, and had been recorded and delivered to Arkansas Savings & Loan Association, that the loan had been approved and signed, that the property was Hudson's and that everybody was happy. He said that the transaction had taken place in early 1977 when Hudson had obtained a tenant for the building on the property. He also testified that Hudson had spent about $30,000 improving the building on the property, but that the building had burned on the day after Hudson or his tenant had first occupied it.

In disposing of the first appeal, in which appellees here were appellants and appellants here were appellees, we said:

Appellants contend they are entitled to damages for breach of contract in lieu of specific performance. The chancellor made no finding on the issue of damages since he found there was no breach of the contract. It is undisputed that appellees conveyed the land to another following the alleged breach of contract. It is well established that the measure of damages for a breach of contract to convey is based on the value of the land at the time of the breach. *Kempner* v. *Cohn,* 47 Ark. 519, 1 S.W. 869 (1886). Here appellants exercised their right to purchase as of November 1, 1974. Appellees had four months from that date to convey title and failed and refused to do so. Appellants adduced evidence from an appraisor that the fair market value of the property was $193,151 "as of 1975," which figure, say appellants, would be reduced by the "mortgage indebtedness of $80,349 leaving an equity of [$102,803] of Appellants in the property." This asserted equity is the amount of

damages sought by them. The appraiser did not know the property was encumbered by a twenty year lease-purchase option which he said could result in the property being "worth more or it may be worth less." Therefore, appellees argue that appellants did not sufficiently demonstrate the value of the property with respect to the date of the appraisal nor what effect the mortgage or the lease-purchase agreement had upon the value of the property. Ordinarily, we might agree with appellees. However, there is other evidence which should be considered with respect to the value of the property or damages in lieu of specific performance. It is undisputed that in March, 1975, some four months after appellants had exercised their option to purchase, appellees refused to sign appellants' proffered deed to the property, with assumption of the mortgage, at which time it appears the mortgage balance due to TCB for the original construction loan of $85,000 was $80,349. It appears it became unnecessary to sell the property by a foreclosure sale. Appellees acquired possession and in January, 1977, conveyed the property to a relative of one of them for $165,000. Therefore, a difference of $85,651 ($165,000 — $80,349) existed based upon appellees' own sale of the property. In the unique circumstances, we hold appellants are entitled at least to this sum for its damages in lieu of specific performance of the contract.

The decree of the chancery court was reversed and the cause remanded for proceedings not inconsistent with the opinion rendered.

At a hearing after remand, held on November 9, 1978, appellees here offered no evidence. Appellants then objected that judgment was being rendered without any testimony having been taken and asked to make an offer of proof. They then proffered the following testimony: that of Sharon Ferguson that the income tax returns of the partnership of F & M Investments did not reflect any profit from the sale of the real estate to Freddie Hudson; that of Freddie Hudson that he purchased the property for what was owed Twin City Bank on the condition that he could "finance the property" and that he made certain improvements using his own funds,

but that he did not pay $165,000 for the property and never paid Ferguson or Matthews one penny; that of Charles Matthews that the sale to Hudson was on a "look-at, look-see thing" for $1.00 and other good and valuable consideration, but not for any price of $165,000 and that he purchased the property at the judicial sale on foreclosure of the Twin City Bank's mortgage for just less than $99,000 and later through a real estate agent, sold the property for $107,500, suffering a loss of $11,073.89, after paying the real estate agent's commission, the closing costs, and delinquent taxes that had accrued during "Mr. Hudson's ownership," without considering the interest accruing on a note before he obtained the funds to pay the real estate agent's commission; that of Dietz, the real estate agent, that the sale was at fair market value, and was closed on June 1, 1978, and that his commission of $7,000 was paid on September 19, 1978; that of Ferguson that Hudson paid no money for the purchase of the property but assumed the note at Twin City Bank as the full purchase price and that the revenue stamps on the deed to Hudson, indicating a consideration of $165,000, did not reflect the actual consideration; that of H. B. Stubblefield that revenue stamps on a deed do not necessarily reflect the actual consideration, but that, in many instances, stamps in excess of the amount required by law are affixed.

Appellants on this appeal contend that appellees were entitled to only $19,079.78. This is the difference between the net proceeds of the sale by Matthews after his purchase at the foreclosure sale, less $80,349 paid as the balance due on the debt to Twin City Bank. They give no consideration to the loss of the building on the property when the option was exercised.

For the most part appellants rely for reversal on cases relating to remand of chancery cases for further proof, and on cases from other jurisdictions stating that retrial should be limited to certain issues only when it is clear that doing so will insure a fair trial. On the record before us at the time of the remand, there was no indication that our limitation of the issues on remand did not insure a fair trial of any issue remaining.

Appellants' present argument really is that we should have remanded the case without placing a floor on the amount of damages recoverable by appellees. But this is a matter which was determined on the first appeal, on a record which clearly established that appellees were entitled to at least that minimum. Appellants advanced the same argument in their petition for rehearing, which was denied.

Appellants' arguments are based upon a misconception, not only of the basis of our decision on the first appeal, but also of the scope of appellate review on the first appeal and the effect of that decision, as well. When the basis of our decision is viewed correctly in the light of the proper scope of appellate review on the first appeal and the effect of that decision, the decree entered by the chancellor was correct beyond doubt.

Appellants seem to think that we based our finding that they conveyed the property to Hudson for $165,000 upon a mirage produced by the amount of documentary stamps placed on the deed by which the conveyance was made. This is not so. The deed was not abstracted and, so far as the record reflects, never was introduced in evidence. Ferguson testified positively and unequivocally that the consideration for the deed was $165,000. He was asked, "What was the purchase price?" He answered, "$165,000."

We find no suggestion in Ferguson's testimony that this was a fictitious sale, or a conditional one, or that there was any chance that the consideration would not be paid. His testimony was quite to the contrary, and appellants had ample opportunity to develop the matter further. Instead of doing so, they elected to submit the matter solely on their contention that Green and Morgan were not entitled to exercise their option, without developing these facts and without offering evidence as to the damages suffered by the Greens and the Morgans.

When the case reached this court on appeal, it was reviewed as all equity cases are and should be reviewed. Equity cases are tried de novo on appeal upon the record made in the chancery court, and the rule that this court dis-

poses of them and resolves the issues on that record is well established; the fact that the chancellor based his decision upon an erroneous conclusion does not preclude this court's reviewing the entire case de novo. *Sharum* v. *Terbieten,* 241 Ark. 57, 406 S.W. 2d 136; *Conrad* v. *Carter,* 255 Ark. 327, 500 S.W. 2d 336. An appeal in a chancery case opens the whole case for review. All of the issues raised in the court below are before the appellate court for decision and trial de novo on appeal in equity cases involves determination of fact questions as well as legal issues. *Lewis* v. *Lewis,* 255 Ark. 583, 502 S.W. 2d 505; *Gaither* v. *Campbell,* 94 Ark. 329, 126 S.W. 1061; *Arkansas State Board of Pharmacy* v. *Fey,* 235 Ark. 319, 357 S.W. 2d 658. The appellate court reviews both law and fact and, acting as judges of both law and fact as if no decision had been made in the trial court, sifts the evidence to determine what the finding of the chancellor should have been and renders a decree upon the record made in the trial court. *Nolen* v. *Harden,* 43 Ark. 307, 51 Am. Rep. 563; *Lewis* v. *Lewis,* supra. The appellate court may always enter such judgment as the chancery court should have entered upon the undisputed facts in the record. *Larey, Commissioner* v. *Continental Southern Lines,* 243 Ark. 278, 419 S.W. 2d 610.

This court reviewed this case according to the invariable practice in equity cases and found that the chancery court had reached the erroneous conclusion that Green and Morgan were not entitled to specific performance. But this did not conclude the review. On the record before us, the property had been conveyed to Hudson, thus eliminating specific performance as a remedy available to Green and Morgan because there was no indication that Hudson had any notice of the claims of Green and Morgan. Whenever specific performance of a contract is denied because it cannot be enforced in a chancery action, but there has been a breach of the contract, the plaintiff is entitled to recover damages for the breach and, the chancery court, having assumed jurisdiction of the action, should determine the damages resulting from the breach. *Nakdimen* v. *Atkinson Improvement Co.,* 149 Ark. 448, 233 S.W. 694. Thus the question of damages for breach of the contract by appellants here was an unresolved issue and it was the duty of this court to determine the amount of damages. We properly considered this issue on

trial de novo. *Killingsworth* v. *Tatum,* 203 Ark. 354, 157 S.W. 2d 30; *Orr* v. *Bergemann,* 225 Ark. 616, 284 S.W. 2d 105.

Green and Morgan had offered evidence on the issue and there was no reason for this court to believe that appellants here (appellees on the first appeal) had not offered whatever evidence they relied upon on that issue. They certainly had not been deprived of the opportunity to do so by any action of the trial court. Where the case has been once heard upon the evidence or there has been a fair opportunity to present it, this court will not usually remand a case solely to give either party an opportunity to produce other evidence; the rule, however, is not imperative and this court has the power, in furtherance of justice, to remand any case in equity for further proceedings, including hearing additional evidence. *Fish* v. *Bush,* 253 Ark. 27, 484 S.W. 2d 525; *Wilson* v. *Rodgers* (on rehearing), 250 Ark. 356, 468 S.W. 2d 750; *Nakdimen* v. *Atkinson Improvement Co.,* supra; *Brizzolara* v. *Powell,* 214 Ark. 870, 218 S.W. 2d 728. It has been the invariable practice of this court not to remand a case to a chancery court for further proceedings and proof where we can plainly see what the equities of the parties are, but rather to render such decree here as should have been rendered below. *Pickett* v. *Ferguson,* 45 Ark. 177, 55 Am.Rep. 545; *Narisi* v. *Narisi,* 233 Ark. 525, 345 S.W. 2d 620. See also, *Baxter County Bank* v. *Copeland,* 114 Ark. 316, 169 S.W. 1180. The usual practice is to end the controversy by final judgment here or by directions to the trial court to enter a final decree. *Wilborn* v. *Elston,* 209 Ark. 670, 191 S.W. 2d 961. With the evidence fully developed, this court should decide the case without remanding it to the chancery court. *Lewis* v. *Lewis,* supra.

Following the conventional procedure, we undertook to determine what damages should have been awarded appellees Green and Morgan. It was clear to us that on the record before us that they were entitled to at least the difference between the consideration for the conveyance to Hudson and the mortgage indebtedness to Twin City Bank. We might well have entered judgment for that amount or directed the chancery court to do so, but Green and Morgan had offered evidence that the damages were $102,803, which appellees there (appellants here) had attacked on the ground

that the expert witness's testimony was based upon error for failure to take into consideration all the pertinent factors bearing upon the question. The only objection to that testimony was that it was irrelevant. We were unwilling to enter judgment here upon the testimony of the expert witness.

The appellate court does have the discretionary power to remand an equity case for further proceedings. *Arkansas Commerce Com'n. v. St. L. S. W. Rwy.*, 247 Ark. 1032, 448 S.W. 2d 950. Even though the general rule is that this court will not permit cases to be tried piecemeal, an equity case may be sent back for additional proof when we find justification for a deficient record. *Fish* v. *Bush,* supra. We have exercised the power of this court to remand an equity case for further proceedings when it is clear to us that the chancery court's decision was based upon an erroneous theory, and we cannot determine from the record the rights and equities of the parties. *Lewis* v. *Lewis,* supra. In such a case, the appellate court may, in its discretion, remand for further hearing, either on the whole case or on certain issues. *Wilborn* v. *Elston,* supra. The appellate court has the discretionary power to remand a chancery case for further proof on a limited point. *Shick* v. *Dearmore,* 246 Ark. 1209, 442 S.W. 2d 198. In exceptional circumstances, the appellate court is clothed with discretion to remand an equity case for additional proof, if that is necessary to achieve equity. *Arnett* v. *Lillard,* 247 Ark. 931, 448 S.W. 2d 626.

In retrospect, it might have been better if we had simply entered judgment for $84,651 here.[1] But we exercised our discretion to remand the case for a determination whether Green and Morgan were entitled to recover more than that amount, because they asked judgment here on the basis of the expert witness's testimony and other evidence might well have been offered by them, had the testimony of their expert witness been excluded upon objection or motion to strike in the trial court. This court exercised its discretion to remand

[1]In our opinion on the first appeal, where we subtracted $80,349 from $165,000, we showed a remainder of $85,651, instead of the correct amount of $84,651. The law of the case is not so inflexible that we cannot resolve a conflict apparent on the face of the earlier opinion, by correcting an obvious arithmetical error.

the case for additional proof, limited to damages in excess of $84,651, and that decision here was conclusive on the parties, the trial court and this court, on a subsequent appeal, and the further proceedings in the trial court were strictly limited by our decision on the first appeal to the one matter left open. *Gaither v. Campbell,* 94 Ark. 329, 126 S.W. 1061; *Fortenberry v. Frazier,* 5 Ark. 200; *Milsap v. Holland,* 186 Ark. 895, 56 S.W. 2d 578. Appellants here had no right to have the case reopened to permit them to offer evidence on the damage phase of the case since that proof could have been offered at the original trial. *Carter v. Zachary,* 243 Ark. 104, 418 S.W. 2d 787; *Fish v. Bush,* supra. The established practice of this court, when a new trial on any part of an equity case is intended, is to give special directions to that effect. *Deason & Keith v. Rock,* 149 Ark. 401, 232 S.W. 583. We followed that practice. Except for the matter left open in our decision on the first appeal, that decision was conclusive. *Gaither v. Campbell,* supra. The chancery court had no power to enter any decree except that directed by this court, and it had no power to change or extend the mandate of this court. *Sellers v. Horney,* 148 Ark. 390, 230 S.W. 575. The directions of this court upon reversal and remand in an equity case are the law of the case and the guide for the lower court in entering the decree. *Walker v. Goodlet,* 109 Ark. 525, 160 S.W. 399.

Whatever this court decided in the exercise of its appellate jurisdiction must be considered as finally settled. *Fortenberry v. Frazier,* supra; *Ashley v. Cunningham,* 16 Ark. 168; *Milsap v. Holland,* supra; *Watkins v. Acker,* 195 Ark. 203, 111 S.W. 2d 458. This court's judgment or decree became the law of the case and the trial court could not have varied it or judicially examined it for any purpose other than carrying it into execution. *Fortenberry v. Frazier,* supra. No matter how irregular the decision of a superior court may be or upon what misapprehension of the facts it may have been made, it is the law of the case to the inferior court, and it must be obeyed. *Cunningham v. Ashley,* 13 Ark. 653; *Ashley v. Cunningham,* supra. The holding of this court became the law of the case and the issues decided could no longer be litigated by the parties. *American Co. of Arkansas v. Wheeler,* 183 Ark. 550, 36 S.W. 2d 965; *Wilborn v. Elston,* supra. The chancery court can give no other or further relief as to any matter decided by

the supreme court, even when error is apparent; it can only settle such matters as have been remanded to it and not adjudicated on appeal. *Fortenberry* v. *Frazier,* supra.

Where a judgment [or decree] is reversed for error in the proceedings in the court below and remanded for proceedings according to law and not inconsistent with the opinion of the court, it is always understood that the proceedings in the court below, prior to the fault or error which is ascertained by this court to exist, are in no wise reversed or vacated by the adjudication of the appellate court, but the fault or error adjudicated is the point from which the cause is to progress anew. *Nelson* v. *Hubbard,* 13 Ark. 253.

The question before the chancery court was what the judgment of this court was, not what it should have been. *Sellers* v. *Horney,* supra. Appellate power is exercised by the supreme court over the proceedings of inferior courts, not by the latter over those of the former. *Fortenberry* v. *Frazier,* supra. The chancery court may only inquire on remand concerning a matter which has never been adjudicated and which is not in conflict with the appellate court's mandate. *American Co. of Arkansas* v. *Wheeler,* supra. The chancery court cannot review, alter or modify the judgment or decree of the appellate court for any supposed error or for any other matter that might have been considered on appeal. *Meyer* v. *Johnson,* 60 Ark. 50, 28 S.W. 797. What we said there is appropriate here, viz:

The motion of Mrs. Alice B. Johnson, as executrix of W. W. Johnson, deceased, was properly overruled. The object of it was to change or modify the judgment of this court for a supposed error. If such an error existed, it could have been corrected when this cause was here on the first appeal. The chancery court could not do so. It cannot "review, alter, or modify the judgments or decrees of this court for any supposed error, or for any matter which might have been considered here." *Jacks* v. *Adair,* 33 Ark. 161.

To tolerate a disregard of the authoritative mandate of the superior court by an inferior one and a reinvestigation of the questions upon which a decision has been made by the in-

ferior court would, in effect, constitute the inferior the superior one with power to decide upon the correctness and validity of the superior court's decisions. *Ashley* v. *Cunningham,* supra. On this second appeal, after remand by this court on the first appeal, the question before us is what the judgment of this court was, not what it should have been. *Sellers* v. *Horney,* supra. Nothing is before us except the proceedings subsequent to the mandate. *Milsap* v. *Holland,* supra; *Fortenberry* v. *Frazier,* supra.

The minimum damages allowable to Green and Morgan and the terms of the remand on our decision are the law of the case and are binding on the parties, the trial court and this court, on this appeal, even if we should now think they were erroneous. *Arkansas Baptist College* v. *Dodge,* 189 Ark. 592, 74 S.W. 2d 645; *International Harvester Co.* v. *Burks Motors, Inc.,* 252 Ark. 816, 481 S.W. 2d 351; *Farmers Cooperative Ass'n. Inc.* v. *Phillips,* 243 Ark. 809, 422 S.W. 2d 418; *M. L. Sigmon Forest Products, Inc.* v. *Scroggins,* 250 Ark. 385, 465 S.W. 2d 673; *Wilson* v. *Rodgers,* 256 Ark. 276, 507 S.W. 2d 508; *Anderson* v. *McClanahan,* 229 Ark. 239, 314 S.W. 2d 222; *Collie* v. *Coleman,* 226 Ark. 692, 292 S.W. 2d 80; *Meyers* v. *Meyers,* 214 Ark. 273, 216 S.W. 2d 54; *Baker* v. *State,* 201 Ark. 652, 147 S.W. 2d 17; *Hutson Motor Co.* v. *Lake,* 193 Ark. 200, 98 S.W. 2d 947; *Stuart* v. *Barron,* 148 Ark. 380, 230 S.W. 569.

The decree is affirmed, but modified to reduce the amount of the judgment by $1,000.